# In the United States Court of Federal Claims

No. 99-382V

(Filed: December 10, 2009)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| QUINTON O. RIGGINS, Jr., | \* |
| Petitioner, | \* |
| v. | \* |
| SECRETARY OF HEALTH AND HUMAN SERVICES | \* |
| Respondent. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION ON MOTION FOR REVIEW

This matter comes before the Court on Petitioner's Motion for Review of the Chief Special Master's decision on Petitioner's application for attorneys' fees and costs for various hepatitis B cases ("Pet.'s Mot"). The Court notes that Petitioner does not challenge the Chief Special Master's award of $16,547.16 in attorneys' fees and costs related to work on the petition of Quinton O. Riggins. Dec. at *1, *26. Petitioner, on April 1, 2008, filed an Application for Attorneys' Fees and Costs ("Pet.'s App."), in which he requested $204,619.18 in attorneys' fees and costs related to approximately 150 hepatitis B vaccine cases filed by petitioner's counsel, Clifford J. Shoemaker of Shoemaker & Associates ("S&A"), after the hepatitis B vaccine was added to the Vaccine Table. On June 15, 2009, the Chief Special Master awarded $64,254.24 in attorneys' fees and $14,528.36 in costs pertaining to generalized work in litigating claims that the hepatitis B vaccine caused various injuries. *Riggins v. Sec'y of HHS*, No. 99-382V, 2009 WL 3319818 (Fed. Cl. Spec. Mstr. June 15, 2009) ("Decision" or "Dec."). Petitioner challenges these findings, arguing that the Chief Special Master abused his discretion by arbitrarily and capriciously reducing Petitioner's application, chiefly regarding the costs awarded for the work of consultants used by Petitioner's counsel. Petitioner also argues that the Chief Special Master applied the wrong standard in determining whether Petitioner's requested fees and costs were allowable.

The Court finds that Petitioner's motion for review totally fails to explain how the Chief Special Master abused his discretion in rendering his decision disallowing much of the fees and costs requested by Petitioner. Likewise, the Court finds that the Chief Special Master did not

misapply the legal standard for awarding fees and costs in this case.  For the reasons enumerated below, therefore, the Court DENIES Petitioner's motion.

## I.     Background[1]

On April 1, 2008, Petitioner filed an application for attorneys' fees and costs.  In its application, Petitioner sought reimbursement for $204,619.18 in attorneys' fees and costs for worked performed by his counsel, Mr. Shoemaker and his associates, and for work performed by experts and consultants retained by Mr. Shoemaker.  These fees and costs were for "general" work performed and costs incurred in Petitioner's counsel's prosecution of approximately 150 cases involving the hepatitis B vaccine.  An application for reimbursement of fees and costs that were not incurred specifically in connection with Petitioner's claim under the Vaccine program is unusual, but not unprecedented.  As explained by the Chief Special Master, beginning around 1999, the Vaccine program received a large number of claims alleging injuries resulting from the receipt of hepatitis B vaccinations.  Efforts were made by the Chief Special Master, counsel for petitioners, and Respondent's counsel to organize the claims into particular injury categories.  Additionally, the Chief Special Master and the parties attempted to utilize an independent panel of experts, which was known as the "hepatitis B panel" to assist in the resolution of several hundred hepatitis B cases.  However, the hepatitis B panel failed because of funding issues.  Dec. at *2 (citing *Ross v. Sec'y of HHS*, No. 05-417V, 2007 WL 415187 (Fed. Cl. Spec. Mstr. Jan. 22, 2007); *Simmons v. Sec'y of HHS*, No. 99-546 (Fed. Cl. Spec. Mstr. Sept. 24, 2007) (unpublished)).  The Chief Special Master has in the past awarded fees and costs incurred by other petitioners' counsel in connection with the hepatitis B panel without objection by respondent.  Dec at *2.

Originally, the Chief Special Master directed S&A to file its application for the fees and costs that it incurred in connection with the hepatitis B panel in the *Simmons* proceeding.  *See Simmons v. Sec'y of HHS*, No. 99-546 (Fed. Cl. Spec. Mstr. April 11, 2007) (unpublished order).  Accordingly, S&A filed its application on April 23, 2007, in *Simmons* as directed.  However, as explained by the Chief Special Master, "it became apparent that S&A's fee request would result in substantial delays in resolving counsel's fees and cost requests in *Simmons*, thus Mr. Shoemaker withdrew his request in *Simmons* and elected to pursue his general hepatitis B fees within [*Riggins*]."  Dec. at *2.  Accordingly, on April 26, 2007, the Chief Special Master struck S&A's fee application from the record in *Simmons*.  *Simmons v. Sec'y of HHS*, No. 99-546 (Fed. Cl. Spec. Mstr. April 26, 2007) (unpublished order striking S&A's fees and costs application from the record).

After some period of time, S&A provided to Respondent's counsel an informal demand of its general hepatitis B fees and costs.  Dec at *2.  The parties then pursued informal resolution of S&A's informal demand for an extended period of time.  On March 31, 2008, at Petitioner's request, the Chief Special Master held a status conference in which he urged Petitioner's counsel

---

[1]   The factual background is derived from the Chief Special Master's Decision and the Application for Attorneys' Fees and Costs, dated April 1, 2008.

2

to file its application formally while the parties pursued informal resolution of the matter.  *Id.*  Accordingly, on April 1, 2008, S&A filed its application for general hepatitis B fees and costs in the instant case.  *Id.*

In his decision on S&A's attorneys' fees and costs application, the Chief Special Master significantly reduced the amount of fees and costs sought by S&A, much of which he reduced *sua sponte*.  Out of $204,619.18 in fees and costs sought by S&A with respect to its general efforts on the hepatitis B proceedings, the Chief Special Master awarded $79,782.81.  Dec. at *26.  For purposes of resolving Petitioner's motion, the fees and costs disallowed by the Chief Special Master fall into three categories.  The first category consists of disallowed general hepatitis B costs (for fees and expenses) in the amount of $87,443.43 for services rendered by Dr. Mark Geier, a geneticist, and his son, Mr. David Geier, retained by Petitioner as consultants. The Chief Special Master disallowed those claimed costs which he determined were incurred in connection with work for which the Geiers were unqualified to perform or beyond the scope of their role as consultants or otherwise duplicative.  Dec. at *6-*11.  The second category of fees and costs at issue in Petitioner's motion are fees and expenses incurred in connection with foreign travel by the Geiers and Petitioner's counsel.  Dec. at *12-*13, *16.  The final category of fees at issue are for hours billed by counsel for meetings with the Geiers when, according to the Chief Special Master, they were unqualified to discuss the matters or their involvement in the litigation was unnecessary.  Dec. at *16.  Before analyzing the specific categories of fees and costs that are presently issue in this motion, however, the Chief Special Master embarked on an extended discussion of the legal standard of reasonableness, and then made some general observations on the reasonableness of Petitioner's fees and costs application.   His discussion and observations are summarized in further detail below.

The Chief Special Master explained that, in the present case, the rates of the attorneys, experts, and consultants were not at issue.   Instead, the issue presented was, (for the purpose of resolving this motion for review), the reasonableness of the number of hours expended by Petitioner's counsel and consultants.  Dec at *3.  The Chief Special Master noted that the burden was on Petitioner to show that the fees and costs it requested are reasonable.  Dec at *3 (citing *Wasson v. Sec'y of HHS*, 24 Cl. Ct. 482, 484 n. 1 (1991)).

The Chief Special Master then quoted approvingly an analysis of the standard for evaluating "reasonable costs" by Special Master Christian Moran which is reproduced in part below:

> "Reasonableness" may be evaluated from a paying client's perspective.   The United States Supreme Court stated that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (emphasis in original) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).   If a hypothetical yet reasonable client would be willing to pay for an expert's report, then it is appropriate to award compensation for that expert's report.   The client must be pictured hypothetically because individual attributes of [petitioner] (for example, his wealth or poverty) should not determine whether the cost is

>   reasonable. Furthermore, it must be assumed that the client would have to pay for the expert because the client's self-interest would lessen the likelihood that the client would invest money into the expert needlessly.

Dec. at *3 (quoting *Sabella v. Sec'y of HHS*, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Sept. 23, 2008), *aff'd in part and rev'd in part on other grounds*, *Sabella v. Sec'y of HHS*, 86 Fed. Cl. 201 (2009) (citations altered and omitted)). Although Special Master Moran's extended discussion of the reasonableness standard took place within the context of "reasonable costs," the Chief Special Master determined that the same test was also equally applicable to reasonable fees. Dec at *3.

In determining the reasonableness of the number of hours expended, the Chief Special Master stated that he was required to exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Dec. at *4 (quoting *Hensley*, 461 U.S. at 434).

The Chief Special Master asserted that he was "extremely familiar with counsel's advocacy on behalf of Vaccine Program petitioners, as counsel and the undersigned have been involved with the Vaccine Program since its inception." Dec at *5. While noting that counsel was an able vaccine attorney, the Chief Special Master stated that counsel had a prior history of "poor judgment" with respect to monitoring the fees and costs in his cases. Dec. at *5 n.6 (citing 17 special master decisions reducing counsel's fee requests). With respect to S&A's fees and costs application in the instant case, as a general matter, the Chief Special Master initially found that it "represents the height of unreasonableness—lacking convincing explanation, devoid of support from similar past practices of this counsel or any other counsel practicing in this Program, and patently unreasonable." Dec. at *5. Quoting *Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1521 (Fed. Cir. 1993), for the proposition that it is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done," the Chief Special Master stated that he would "reduce [S&A's] request as appropriate, based upon the undersigned's experience and expertise in this area." Dec. at *5.

After concluding his general observations on the reasonableness of Petitioner's application, the Chief Special Master then turned to the first category of disallowed costs: the fees and expenses incurred by the Geiers. He noted that Dr. Mark Geier is a Ph.D in genetics, an M.D., and is board certified in genetics. Dec. at *8. Mr. David Geier, however, possessed only a Bachelors of Arts in Biology degree. He had taken graduate level coursework, but did not finish any program nor did he appear to be currently enrolled in any program. Dec. at *7. Nevertheless, S&A sought reimbursement for $37,543.75 in fees to be paid to Mr. David Geier. Pet. App. at 51-63. The Chief Special Master disallowed the entirety of this portion of the fee request, finding that Mr. Geier was not qualified to serve as a consultant on the medical issues presented in the Vaccine program insofar as he possessed no advanced degrees or credentials in medicine or science. Dec. at *7. In addition, he determined that the work performed by Mr. David Geier was duplicative and unnecessary in that for every single request for costs for work or travel performed by Dr. Mark Geier, an identically described request was made by Mr. David

Geier, but at a lower rate. *Id.* The Chief Special Master determined that a hypothetical client would find the request for Mr. David Geier's consulting fees to be unreasonable because of his lack of qualifications and the duplicative nature of the fees charged. *Id.*

With respect to the services provided by Dr. Mark Geier, the Chief Special Master found that they were problematic in that a review of the fees showed that, while S&A was claiming the services of Dr. Mark Geier as a consultant rather than as an expert, in fact, Dr. Mark Geier was either performing the function of an expert or performed work that was beyond the limited role of a consultant. Dec. at *10. The Chief Special Master distinguished the roles of consultant and expert as follows:

> Once a consultant performs an initial, limited review of the issues and provides guidance to counsel, an appropriate expert steps in to analyze fully the medical issues involved and offer an opinion. With the expert assisting counsel, the role of the consultant ceases. Counsel consulted with a number of experts in these cases, but Dr. Geier's "consultant" efforts continued. Dr. Geier's efforts were either unnecessary or a duplication of the experts'. A consultant is not an armchair expert.

Dec. at *10. Having distinguished the roles of the consultant and the expert, the Chief Special Master delineated the period of time during which he found Dr. Mark Geier's claimed fees and costs to be reasonable from the time period during which he found Dr. Mark Geier's claimed fees and costs to be unreasonable:

> In the instant matter, the undersigned finds it was reasonable (and appropriate) for counsel to consult with Dr. Geier in a *limited* manner regarding the hepatitis B claims. Those efforts would entail Dr. Geier performing an initial review of the counsel's hepatitis B claims and some initial research regarding vaccine injuries resulting from hepatitis B vaccine. Dr. Geier would then educate counsel as to the nature of the issues and the types of experts required. However, once Dr. Geier performed an initial review of these claims for counsel, and once counsel began reaching out to doctors who would ultimately serve as experts in S&A's hepatitis B claims, it was no longer reasonable for Dr. Geier to be billing hours and incurring costs in S & A's general hepatitis B efforts. Dr. Geier at this point was moving well beyond the role of a consultant. Thus by the beginning of 2002, when Mr. Shoemaker began to meet with experts to assist in the prosecution of the hepatitis B claims, Dr. Geier's work on behalf of S&A's general hepatitis B efforts was no longer needed and should have concluded. Thus, the undersigned finds it was unreasonable for Dr. Geier to continue to bill for services relating to the S&A's general hepatitis B efforts after the start of February 2002.

Dec. at *10 (internal citations omitted). "Stated another way, once experts were identified and became involved, Dr. Geier's role as a consultant ended." *Id.* at *11.

Accordingly, the Chief Special Master found $10,000.00 to be reasonable compensation for Dr. Mark Geier for his time spent consulting counsel prior to February 2002.  Dec. at *11.  Although the award constituted a 90 percent reduction from the invoices submitted by the Geiers in this matter, the Chief Special Master explained that the amount awarded constituted reasonable compensation for Dr. Mark Geier's services and should not be viewed as a reduction in light of the fact that, according to the Chief Special Master, the time not compensated was largely time spent by Dr. Mark Geier duplicating his own work, the work of experts, or performing the work of experts.  Id.  The Chief Special Master further noted that the awarded $10,000.00 "represents compensation for 50 hours at Dr. Geier's requested hourly rate of $200.00.  The undersigned finds based on his experience in this matter, that this is a generous award for the consultation services performed by Dr. Geier in furtherance of the prosecution of counsel's hepatitis B claims *in general*."  Id. at *14 (emphasis in original).

As stated above, the second category of fees and costs at issue concerns fees and expenses incurred in connection with foreign travel by the Geiers and by counsel.[2]  S&A requested fees in excess of $20,000.00 for a trip to Paris, France in the summer of 2005 by the Geiers, with Petitioner's counsel, to discuss adverse events following hepatitis B vaccinations.  Dec. at *12.  Petitioner also requested $23,690.00 in fees and expenses for a trip to Italy taken by both of the Geiers in the winter of 2006 to attend the Fifth International Conference of Autoimmunity.  Id.  Petitioner argued that the Geiers were invited to present their research at the conference by Dr. Yehuda Shoenfeld, an expert in autoimmunity, and that at the conference the Geiers secured his services as an expert in counsel's cases.  Id.  The total amount billed for travel was in excess of $44,000.00, including $19,175.00 billed as travel time.  Dec. at *12; Pet.'s App. at 60-63.

The Chief Special Master found that Petitioner failed to explain why it was necessary for the Geiers and counsel to have face-to-face meetings with other doctors, journalists, and lawyers about their experiences and research or how they otherwise contributed to the prosecution of the hepatitis B cases as opposed to consulting foreign doctors and experts by electronic means or by obtaining copies of foreign medical research papers by traditional means.  Dec at *12, *13.  Counsel asserted that the test to be applied in evaluating whether a fees and costs request is reasonable is "whether it was reasonable to believe that the trip would result in useful and relevant information that would benefit the cases."  Id. at *12.  The Chief Special Master rejected this test, stating that the test had no support in the Vaccine Act, and that the proper test to be applied is whether a hypothetical client would pay the fees and costs.  Id. (citing *Hensley*, 461 U.S. at 434; *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434) ("[h]ours that are not

---

[2]  The fees and costs associated for foreign travel incurred by the Geiers are a subset of the post-February 2002 fees and costs incurred by the Geiers that were denied by the Chief Special Master for the reasons explained above.  However, S&A has also requested reimbursement for fees and costs incurred for counsel's foreign travel with the Geiers.  Because the foreign travel by counsel and the Geiers are intertwined, this Opinion will consider fees and costs claimed by both counsel and the Geiers to constitute a single category of disallowed fees and costs.

properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphasis in original)). He concluded that a hypothetical client would find these costs to be excessive and would not pay them. Dec. at *12. Although Petitioner argued that the cost of this travel was *de minimis* when apportioned across all of counsel's hepatitis B claims, the Chief Special Master found that fact was irrelevant given the hypothetical client test. *Id.* Moreover, the Chief Special Master also found that these fees and costs were incurred in 2005, long after Dr. Mark Geier's role as a consultant should have concluded and after counsel had retained qualified experts in pursuing hepatitis B claims.[3] Accordingly, the Chief Special Master disallowed all claimed fees and costs for the Geiers' foreign travel. Likewise, the Chief Special Master denied counsel's request for fees and costs for travel to Paris.

> The undersigned notes again that billing for travel to Paris to talk to other lawyers, journalists, and experts represents a complete abdication of counsel's responsibility to monitor fees and costs. Counsel's argument that the costs associated with this trip are reasonable in light of the approximately 150 hepatitis B cases S&A prosecuted is not persuasive. A reasonable client would not pay for counsel to travel to France for what amounts to a search for potential information, without a showing of reasonable need or expectation for success. Counsel has failed to adequately explain why this trip was necessary to advance the prosecution of S&A's hepatitis B cases, and why he could not use alternative means to gather medical articles and discuss hepatitis B causation issues with attorneys and doctors in France short of embarking on a costly international trip.

Dec. at *16. Accordingly, the Chief Special Master reduced the request for fees by $9,487.50 for counsel's billed time related to the Paris trip. Dec. at *16 (citing Pet.'s App. 40-41).

The final category of fees and costs at issue was for hours billed by counsel to meet with the Geiers when, as explained above, their involvement in the hepatitis B litigation was either unnecessary or they were otherwise unqualified to discuss the ongoing hepatitis B litigation. Accordingly, the Chief Special Master denied Petitioner's request for fees and costs associated with counsel's meeting or communicating exclusively with Mr. David Geier. Since counsel met with Mr. David Geier for one hour, the Chief Special Master reduced the fee application by $155.00, which is the rate billed by counsel for one hour of work. Dec. at *16 (citing Pet.'s App. 45-46). Additionally, while the Chief Special Master found that it was reasonable and appropriate for counsel to be awarded fees for meetings and communications with Dr. Mark Geier prior to February 2002, he disallowed any subsequent award for fees after February 2002 because, as explained above, the time period for Dr. Mark Geier's limited role as a consultant

---

[3] In addition, the Chief Special Master noted that the Geiers provided no supporting documentation for $9,399.68 in costs for airline tickets, transportation, food, daily expenses and conference fees, which itself justifies the exclusion of those costs from award. *Id.* at *13 (citing Pet.'s App. at 60-62).

would have reasonably ended by that date.[4]   Accordingly, the Chief Special Master reduced Petitioner's request for fees by $920.50 for 4.1 hours of consultation with Dr. Mark Geier after February 2002.[5]   Dec. at *17.

## II.     Standard of Review

The Court of Federal Claims may set aside a decision of a special master only if a special master's findings of fact or conclusions of law are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  42 U.S.C. § 300aa-12(e)(2)(B).  Findings of fact are reviewed under the deferential "arbitrary and capricious" standard, *Lampe v. Sec'y of HHS*, 219 F.3d 1357, 1360 (Fed. Cir. 2000), and conclusions of law are reviewed *de novo, Saunders v. Sec'y of the Dep't of Health & Human Services,* 25 F.3d 1031, 1033 (Fed. Cir. 1994).  Fee determinations are considered to be factual findings and are therefore "within the discretion of a [special master] and are entitled to deference."  *Saxton*, 3 F.3d at 1521.  "If the special master has considered the relevant evidence of record, drawn plausible inferences, and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate."  *Hines v. Sec'y of HHS*, 940 F.2d 1518, 1528 (Fed. Cir. 1991).  Moreover, "[v]accine program special masters are also entitled to use their prior experience in reviewing fee applications."  *Saxton*, 3 F.3d at 1521.

## III.    Analysis

It is not disputed by the parties that the Chief Special Master has broad discretion to determine reasonable attorney's fees and costs.  *Saxton*, 3 F.3d at 1520-22.  Nor is it disputed by the parties that the fees and costs requested by a petitioner in the Vaccine program must be reasonable.  See 42 U.S.C. § 300aa-15(e)(1)(A)-(B); *Perreira v. Sec'y of HHS*, 27 Fed. Cl. 29, 34 (1992*), aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).  However, Petitioner argues that the Chief Special Master's discretion to review a fees and costs application for reasonableness must be "tempered by Vaccine Rule 3(b) which requires that each party have a full and fair opportunity to present its case."  Pet.'s Mot. at 4 (quoting *Hovey v. United States*, 38 Fed. Cl. 397, 400-01 (1997)).  To that end, Petitioner argues that, in order to have a full and fair opportunity to present its case, its private attorney must be given the opportunity to be "effective."  Pet.'s Mot. at 4.  For the purpose of furthering the effective assistance of counsel, he argues that the proper standard for allowing reimbursement of fees and costs is "would a private attorney billing a client reasonably

---

[4]   However, by way of exception, the Chief Special Master did award post-February 2002 billings by counsel pertaining to an entry on May 28, 2003, and another entry on March 31, 2003, regarding efforts to form a hepatitis B Panel and a meeting of which the Chief Special Master and respondent were aware, respectively.   Dec. at *16 n. 28.

[5]   A review of S&A's fee invoice indicates that counsel did not consult with the Geiers during the month of February 2002 regarding the general hepatitis B proceedings.   Pet.'s App. at 34.

have engaged in similar time expenditures." Pet.'s Mot. at 7. If a billing attorney would have engaged in similar time expenditures, so Petitioner argues, his fees and costs should be reimbursed. Petitioner argues that such a standard is necessary in light of the much larger resources available to Respondent to litigate Vaccine Act claims, stating that the Government employs a large number of attorneys, support staff, consultants and experts for the express purpose of litigation. *See Rupert v. Sec'y of HHS*, No. 99-0774, 2002 WL 31441211, at *3 n.3 (Fed. Cl. Spec. Mstr. Aug. 22, 2002) (noting that the Government employs multiple support staff and experts in a single case).

Petitioner further argues that the disputed expenditures were necessary in light of the heightened standard of proof imposed by the Chief Special Master in *Stevens v. Sec'y of HHS*, No. 99-954, 2001 WL 387418, at *24 (Fed. Cl. Spec. Mstr. Mar. 30, 2001), which required hepatitis B claimants to prove that the vaccine was "plausibly and empirically linked to the injury alleged." This test was later overruled by *Althen v. Sec'y of HHS*, 418 F.3d 1274 (Fed. Cir. 2005). Petitioner claims that Dr. Geier's efforts were required to meet this heightened standard of proof and as evidence indicates that 2/3 of the billing for Dr. Mark Geier took place after *Stevens* was decided in March 2001 and before *Althen* was decided in July 2005. Moreover, he notes that if Dr. Mark Geier's efforts are apportioned across all 150 of his hepatitis B cases, the amount billed would be less than $650.00 per case.

However, as correctly stated by the Chief Special Master, the proper test is not whether a private attorney would have engaged in similar time expenditures in order to advance his client's case, but whether a hypothetical and reasonable client would pay for such expenditures, which is a reformulation of the *Hensley* inquiry into whether such fees and costs would be properly billed to one's client. *See Hensley*, 461 U.S. at 434; *Perreira*, 27 Fed. Cl. at 34 ("The mere fact that petitioners[] agreed to pay $6,600 plus expenses to their medical expert does not make such costs reasonable. . . . Petitioners are not given a blank check to incur expenses without regard to the merits of their claim."). While Petitioner's motion does not cite *Hensley*, this Court cannot ignore it. The fact that *Stevens* imposed a higher causation standard for a period of time and that the Government has immense resources available to litigate Vaccine Act claims in general does not answer the question as to whether a hypothetical client would have reasonably paid for the services claimed by Petitioner's counsel in the instant fees and costs application.[6] With respect

---

[6] In its motion, Petitioner attaches two documents in furtherance of its argument that because the resources of the Government in litigating Vaccine Act cases are enormous, Petitioner should be permitted to spend comparable sums litigating its case in order to fulfill the mandate of Vaccine Rule 3(b) which requires that each party have a full and fair opportunity to present its case. First, Petitioner submitted a one page transcript from a hearing conducted in *Watson v. Sec'y of HHS*, No. 96-639, on November 10, 1997. The second document is a declaration from Robert Moxley, counsel for a petitioner (and submitted) in another Vaccine Act case to address "whether Dr. Mark R. Geier should be compensated for time spent in writing peer-reviewed medical literature." Both documents pertain to the amount of compensation purportedly received by experts who had been retained by the Government. Neither of these documents was included in the record before the Chief Special Master. Vaccine Rule 8(f) provides that "[a]ny fact or

to Petitioner's argument concerning the relative resources available to the parties to litigate Vaccine Act claims, as explained by Special Master Moran, and quoted approvingly by the Chief Special Master,

> [t]he client must be pictured hypothetically because individual attributes of [petitioner] (for example, his wealth or poverty) should not determine whether the cost is reasonable. Furthermore, it must be assumed that the client would have to pay for the expert because the client's self-interest would lessen the likelihood that the client would invest money into the expert needlessly.

*Sabella*, 2008 WL 4426040, at *28. The Chief Special Master's determination of the reasonableness of claimed fees and costs from the perspective of what a reasonable and hypothetical client would pay was particularly appropriate in this case where there are approximately 150 clients whose attributes of poverty or wealth vary from person to person. In its motion, Petitioner has failed to explain why a hypothetical and reasonable client would have paid for any of the fees and costs disallowed by the Chief Special Master.

Furthermore, even if Petitioner's proposed standard was the correct one, a reasonable attorney would not have incurred potentially excessive costs for consultants whose qualifications the Chief Special Master (and other special masters) routinely criticized, particularly when counsel was repeatedly warned by special masters and judges of this Court that he was failing to properly monitor fees and costs. *See* Dec. at *5 n. 6 (citing list of 17 cases where counsel's fee requests were reduced), *8 nn. 12 & 13 (citing list of cases where Dr. Geier's qualifications were challenged). Petitioner has the burden to show, at the time he submits his fee application, that the fees and costs requested by Petitioner are reasonable. *Wasson*, 24 Cl. Ct. at 484 n. 1. Petitioner has not met his burden under his own proposed standard.[7]

---

argument not raised specifically in the record before the special master shall be considered waived and cannot be raised by either party in proceedings on review of the special master's decision." Rules of the United States Court of Federal Claims, App. B, Rule 8(f). Petitioner could have easily attached these documents in its reply to Respondent's opposition to its application, filed on July 1, 2008, for consideration by the Chief Special Master. However, Petitioner did not do so. Accordingly, these documents are not properly before the Court and will not be considered.

[7] In its motion, Petitioner appears to suggest that a special master may not reduce, *sua sponte,* a fee and cost request, citing *Bell v. United Princeton Properties*, 884 F.2d 713, 719 (3d Cir. 1989) (citing *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985)). Counsel for Petitioner has advanced a similar argument before other judges in this Court, in most cases citing *Bell,* and each time his argument has been squarely rejected. *See Valdes v. Sec'y of HHS*, 2009 WL 3347106 (Fed. Cl. Sept. 30, 2009); *Sabella v. Sec'y of HHS*, 86 Fed. Cl. 201, 208-09 (2009); *Carrington v. Sec'y of HHS*, 85 Fed. Cl. 319, 312 (2008); *Savin v. Sec'y of HHS*, 85 Fed. Cl. 313, 318-19 (2008); *Duncan v. Sec'y of HHS*, 2008 WL 4743493 (Fed. Cl. Aug. 4, 2008). Petitioner's argument is inconsistent with this Circuit's holding in *Saxton* which states

Accordingly, the Court finds that the Chief Special Master acted within his discretion in disallowing all fees and costs billed by Mr. David Geier. The Chief Special Master provided a reasoned basis for his determination. In his motion, Petitioner does not provide any specific reason for challenging these expenditures.

With respect to Dr. Mark Geier, the Court likewise finds that the Chief Special Master, based upon his experience in Vaccine Act matters, did not abuse his discretion by awarding $10,000.00 as a reasonable reimbursement for services consistent with a limited initial consultation prior to February 2002. The Chief Special Master provided a reasoned basis for his determination that the invoices of Dr. Mark Geier after February 2002 were duplicative and excessive. Under the *Hensley* standard, such fees are not properly billed to a client. Petitioner's motion for review simply fails to come to grips with the Chief Special Master's point that Dr. Mark Geier was retained for the limited purpose of initial consultation and was not retained as an expert. To the extent that Dr. Mark Geier's assistance was required after the Chief Special Master issued *Stevens*, Dr. Mark Geier had nearly a year's worth of time prior to February 2002 to take *Stevens* into account in performing his limited role in evaluating the pertinent issues in the field. Likewise, the Chief Special Master did not abuse his discretion in reducing the award for fees incurred by counsel in their communications with the Geiers after February 2002.

Finally, the Chief Special Master did not abuse his discretion in disallowing the request for fees and costs associated with the trips to Paris and Italy. Once again, the Chief Special Master provided a reasoned basis for his determination. Both trips took place long after February 2002, and even occurred after *Althen* was decided. In its motion, Petitioner argues that the information obtained from one "Dr. Gherardi," who was apparently an expert retained by a French court regarding the relationship between the hepatitis B vaccine and autoimmune conditions, was valuable to petitioner in trying to meet the heightened burden of proof imposed by *Stevens*. Even accepting counsel's protestations that the information obtained was highly valuable, there is no explanation in Petitioner's motion as to why it was necessary for counsel (or the Geiers) to travel abroad to obtain the information from Dr. Gherardi.

---

that special masters in the Vaccine program have the discretion to review fee and cost applications based on their prior experiences in reviewing fee applications. *Saxton*, 3 F.3d at 1521. Petitioner's motion did not cite *Saxton*. The Chief Special Master is unquestionably experienced in Vaccine Act cases and is familiar with counsel's advocacy in the Vaccine program. Accordingly, the Court need not be further detained by Petitioner's argument.

11

**IV.     Conclusion**

      The Court need not go further.   Petitioner's motion for review is hereby DENIED, and the Chief Special Master's decision is hereby sustained in its entirety.

                                                            s/Edward J. Damich
                                                           EDWARD J. DAMICH
                                                           Judge